UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILDRED E. FRANCIS,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**ACTING DIRECTOR, D.C. OFFICE OF ZONING,** *et al.***,**<br><br>    **Defendants**. | No. 1:23-cv-03156-TSC |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

For the second time in this Court, Plaintiff Mildred E. Francis attempts to contest the Office of Zoning's (OZ's) rejection of her application for a variance from the Board of Zoning Adjustment (BZA) to build a new residence on her property.  Her new Complaint, however, is based on precisely the same central allegation as her prior one:  that OZ should have overlooked her failure to include multiple items—specifically required by applicable District regulations—in her variance application.  And her legal conclusions are likewise the same:  OZ's rejection of her application violates her due process and equal protection rights.  Because this Court properly rejected those claims in *Francis I*, 1:22-cv-00127-TSC, the Court should dismiss the Complaint as barred by claim preclusion.

Alternatively, should the Court consider the merits of Plaintiff's claims, it should dismiss them, on the same basis it did her prior complaint.  First, Plaintiff's due process claims, whether procedural or substantive, fail because Plaintiff lacks a constitutionally recognized property or liberty interest in BZA's consideration of her application, as District regulations explicitly list all required materials for a variance application, and OZ was not required to consider an incomplete

submission. Additionally, even if Plaintiff had a recognized interest, it was fully protected by adequate procedures, both informal and formal. As to Plaintiff's equal protection claim, BZA application requirements are plainly racially neutral, and Plaintiff fails to make even minimally plausible allegations that OZ has any racially discriminatory intent or purpose in its administration of those requirements. Plaintiff's Complaint should be dismissed, with prejudice.

## BACKGROUND

### I. The Variance Application Process

In certain circumstances where the "strict application" of a zoning regulation "would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon" the owner of a piece of property, the owner may ask the BZA to grant a "variance." D.C. Code § 6-641.07(g)(3); *see also* 11Y DCMR § 100.3. Like many aspects of BZA practice, the application process for a variance is established by regulations approved by the Zoning Commission. *See* D.C. Code § 6-641.07(c), (d) (authorizing rulemaking). One set of regulations defines the materials that an applicant for a variance must submit. *See* 11Y DCMR § 300.

Three of the required items are of particular relevance here. First, the applicant must submit either (1) a "memorandum from the Zoning Administrator stating that a building permit application has been filed and certifying the required zoning relief," or (2) a "certification by an architect or attorney" licensed to practice in the District stating that "[t]he relief requested is required in order for the proposed structure to be erected or the proposed use to be established." *Id*. § 300.6. Second, the applicant must submit a "plat, drawn to scale and certified by a survey engineer licensed in the District of Columbia or by the D.C. Office of the Surveyor, showing the boundaries and dimensions of the existing and proposed structures and accessory buildings and structures on the specific piece of property, if necessary." *Id*. § 300.8(b). Third, the applicant

must submit "[a]rchitectural plans and elevations in sufficient detail to clearly illustrate any proposed structure to be erected or altered, landscaping and screening, and building materials." *Id*. § 300.8(c).  The regulations specifically note that an application "shall meet the requirements of this section before it will be accepted by the Office of Zoning for processing," *id*. § 300.1, and later reiterate that the Director of OZ has "discretion … to reject an application for failure to comply with the provisions of this subsection or this title," *id*. § 300.12.

A second set of regulations describes how variance applications are reviewed and processed.  *Id*. § 400.  It specifies that the Director of OZ "shall review for completeness every application filed with the [BZA]."  *Id*. § 400.1.  If the application is complete and accepted for filing, the Director must notify the applicant and various District agencies and officials, and the BZA will then schedule a public hearing.  *Id*. §§ 400.3 to 400.6.  If, on the other hand, the application is incomplete, "the Director shall notify the applicant in writing of any deficiency," listing "the information necessary to make the application complete and the date the information must be received, which shall not be less than five (5) days after the date of notice."  *Id*. § 400.2.  If, after this notice, "the applicant fails or refuses to correct the deficiencies in the application by the date stated, the Director shall not accept the application for filing."  *Id*.  The regulations do not require the Director to provide further rounds of notice, but applicants may always contact the Office of Zoning to discuss the status of an application.

## II.     Plaintiff's Application to the BZA

The full factual background concerning Plaintiff's application, which forms the basis for Plaintiff's lawsuits, is more completely described in the District's motion to dismiss Plaintiff's prior Complaint, and is summarized in relevant part here.  *See* Defs.' Mot. Dismiss Pl.'s Compl. [6] at 4–6, *Francis v. Acting Dir., D.C. Off. of Zoning* (*Francis I*), No. 1:22-cv-00127-TSC

3

(D.D.C. Mar. 31, 2022); *see also Francis I*, No. 1:22-cv-00127-TSC, 2023 WL 4846625, at *1–2 (D.D.C. July 28, 2023) (Mem. Op. dismissing Plaintiff's prior Complaint). On March 31, 2019, Plaintiff applied for a variance with the Office of Zoning and supplemented her application on April 5, 2019. *See* Compl. [1] § III.C ¶ 4, at 6;[1] Exs. A, B. However, her application still lacked several required documents. First, she never submitted a memorandum from the Zoning Administrator nor a certification from an architect or attorney attesting to the necessity of the requested relief. *See* Ex. A at 23, 25; 11Y DCMR § 300.6. Next, although Plaintiff's application contained a plat of the property, Ex. A at 15, that plat did not show "the boundaries and dimensions of the existing and proposed structures," 11Y DCMR § 300.8(b). Finally, Plaintiff's application did not contain any architectural plans. Ex. A at 23–24; 11Y DCMR § 300.8(c).

On April 22, 2019, OZ sent plaintiff a written notice that her application was deficient, Ex. C; Plaintiff responded on April 29, 2019 and May 4, 2019, but without correcting the three deficiencies noted above, *see* Exs. D, E. In light of these deficiencies, OZ did not accept Plaintiff's application for filing. *See* Ex. C ("[Your] Application … has been deemed deficient …. If you do not correct the deficiency within the allotted time, your application will be voided and a new application will have to be submitted."). The application was thus never set for a BZA hearing, nor was Plaintiff required to pay any filing fee. *See* 11Y DCMR § 1600.1 (outlining filing fees for various types of BZA applications).

### III.   Procedural History

On May 21, 2020, Plaintiff filed a petition for review of OZ's rejection of her application in the District of Columbia Court of Appeals. *See* Docket, *Francis v. D.C. Office of Zoning*, No.

---

[1] For ease of reference, citations to page numbers in the Complaint in this brief refer to the ECF page numbers displayed in the Complaint's headings.

20-AA-374 (D.C. Dec. 2, 2020). On December 2, 2020, that petition was dismissed for lack of jurisdiction. Ex. F (Order, *Francis v. D.C. Office of Zoning*, No. 20-AA-374 (D.C. Dec. 2, 2020)). The court noted that "[t]he rules governing BZA's rules of practice and procedure, as promulgated by the Zoning Commission, delegate the authority to review applications to [the Office of Zoning] and unambiguously require [it] to reject noncompliant applications." *Id*. at 1–2 (citing 11Y DCMR §§ 300, 400.1–.04).

Plaintiff then filed a complaint in this Court on January 18, 2022. *See* Ex. G (Compl. [1], *Francis I*, No. 22-cv-00127-TSC (Jan. 18, 2022)). Plaintiff alleged that OZ's refusal to accept her variance application constituted violations of equal protection, due process, and "access to powers vested in the [BZA] to resolve zoning-related [issues] …." Ex. G § II.B, at 3–4. The Court dismissed that complaint on the merits, holding that Plaintiff had failed to plausibly allege "that Defendants deprived her of a cognizable Due Process interest," *Francis I*, 2023 WL 4846625, at *2, or "that Defendants' policies are motivated by a racially discriminatory purpose," *id*. at *3 (quotation and citation omitted). Plaintiff's subsequent motions for a new trial and for partial summary judgment were denied on September 6, 2023. *See* Order, *Francis I*, No. 22-cv-00127-TSC (Sept. 6, 2023) ("[T]he appropriate way to challenge dismissal of a case is to timely file an appeal.").

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."

5

*Id.* (quoting *Twombly*, 550 U.S. at 556). "While legal conclusion can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "Courts may consider documents 'incorporated in the complaint' when considering a 12(b)(6) motion," *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), along with "matters such as records from other court proceedings over which a Court may take judicial notice," without converting the motion to dismiss into a motion for summary judgment. *Banks v. Inspired Teaching Sch.*, 243 F. Supp. 3d 1, 4 (D.D.C. 2017) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

**ARGUMENT**

I.   **Plaintiff's Complaint Should Be Dismissed Under the Doctrine of Claim Preclusion Because It Duplicates Her Previously Dismissed Complaint.**

As this Court has now recognized, there are "similar claims raised in this matter" as in Plaintiff's "previous action" which "was dismissed by this [C]ourt on July 28, 2023 …." Minute Order (Jan. 16, 2024). In fact, the claims are in relevant part identical, and the Court should dismiss this Complaint as barred by claim preclusion.

"Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation and citation omitted). Claim preclusion "plays a central role in advancing the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quotation and citation omitted). "As the Supreme Court has explained: 'To preclude parties from contesting matters that they have had a

6

full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id*. (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). Claim preclusion applies to cases "(1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) [if] there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Nat. Res. Def. Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (citation omitted).

Here, each prong is met. First, Plaintiff's Complaint brings claims under 42 U.S.C. § 1983, citing the Due Process Clause, Equal Protection Clause, and D.C. Code §§ 6-641.07(f), (g). *See* Compl. § II.B, at 4. These are precisely the same as her prior complaint. *See* Ex. G § II.B, at 4. And each is based on the same underlying facts: OZ's rejection of her application for a variance from the BZA. *See, e.g.*, Compl. § III.C ¶ 4, at 6; Ex. G § III.C, at 6–9. To the extent Plaintiff has slightly repackaged her claims across the two filings, claim preclusion nonetheless applies: "[W]hether a case is duplicative or not turns on whether the two cases at issue share the same 'nucleus of facts,'" and "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that 'were or *could have been* raised in that action.'" *Ramos v. Unknown Special Agent*, No. 1:23-CV-00423, 2023 WL 2894370, at *2 (D.D.C. Apr. 10, 2023) (Chutkan, J.) (emphasis in original) (citing *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002)). Here, "[t]here is no question that this matter arises out of the same nucleus of facts as [P]laintiff's prior case[]." *Id*. As such, any of the claims in this case "could have been raised in that action," *id*., including the apparently novel (and unsubstantiated) allegations in Plaintiff's substantive due process claim, all of which purportedly pertain to her variance

7

application. Compl. § III.C ¶¶ 13a–13h, at 11.[2]

There also can be no dispute that Plaintiff has sued the same Parties. Mayor Bowser and the "Acting Director of D.C. Office of Zoning," in their official capacities, are named as defendants in both complaints. *See* Compl. § I.B, at 2; Ex. G § I.B, at 2. And the prior dismissal satisfies the third criteria, a final judgment on the merits. "Dismissals pursuant to Rule 12(b)(6) are generally considered final judgments on the merits." *Perry v. Int'l Bhd. of Teamsters*, 247 F. Supp. 3d 1, 9 (D.D.C. 2017) (Chutkan, J.) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). There was no ambiguity in the Court's dismissal order, which clearly noted "[t]his is a final order." Order, *Francis I*, No. 22-cv-00127-TSC (July 28, 2023). Finally, this Court is one of competent jurisdiction over Plaintiff's prior Complaint. *See* 28 U.S.C. § 1331. Because every element of the test for claim preclusion is met, the Court should dismiss the Complaint on this ground alone.

II. **Should the Court Consider the Merits of Plaintiff's Complaint, It Should Dismiss It for Failure to State a Claim, for the Same Reasons the Prior Complaint Was Dismissed.**

   A. **Plaintiff's Due Process Claim Should Be Dismissed Because She Lacks a Constitutional Interest in Her Incomplete Application and the Office of Zoning's Procedures Are Constitutionally Adequate.**

Plaintiff's due process challenges[3] fail for the same reasons her prior due process challenge did. "In order to make out a violation of due process, the plaintiff must show the

---

[2]   To the extent Plaintiff wishes to challenge any of the Court's rulings in the prior case, the Court was correct to note that "the appropriate way" would have been to file an appeal. *See* Order, *Francis I*, No. 1:22-cv-00127-TSC (Sept. 6, 2023).

[3]   Although both Claims One and Two are styled as under the Fourteenth Amendment, *see* Compl. §§ II.B, III.C ¶¶ 13, 14, due process claims against the District are properly considered under the Fifth Amendment instead. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).

8

Government deprived her of a 'liberty or property interest' to which she had a 'legitimate claim of entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally insufficient.'" *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Here, Plaintiff lacks a cognizable constitutional interest in BZA consideration of an incomplete application for a variance, and, even if she had such an interest, the District's administrative procedures amply protect it.

        **1.**    **Plaintiff Lacks a Cognizable Interest in Her BZA Application Because She Is Not Entitled to BZA Consideration of an Incomplete Application.**

A due process claim necessarily depends on a substantive underlying interest "because process is not an end in itself." *Roberts*, 741 F.3d at 161 (quotation omitted).  "Liberty interests may either be located in the Constitution itself or 'may arise from an expectation or interest created by state laws or policies.'" *Atherton*, 567 F.3d at 689 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 2211 (2005)).  Similarly, "the Constitution does not create property interests, [so] courts must look to 'existing rules or understandings that stem from an independent source such as state law' … ." *UMC Dev., LLC v. District of Columbia*, 401 F. Supp. 3d 140, 151 (D.D.C. 2019) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)) (considering property interests in the analogous context of a Fifth Amendment Takings Clause claim).  "A mere unilateral expectation or an abstract need is not a property interest entitled to protection." *Id.* (quoting *Webb's Fabulous Pharmacies*, 449 U.S. at 161).  Similarly, a substantive due process claim fails if a Plaintiff lacks a cognizable liberty or property interest. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 540 (D.C. Cir. 2015).

Here, Plaintiff's Complaint alleges that she has been denied a "right to use and develop the residential lot," which she claims "derives from D.C. Official Code," citing D.C. Code §§ 6-

9

641.07(f), (g)(1), (g)(3), (g)(4).  *See* Compl. § II.B, at 4.  But none of these provisions, or indeed any of the District's regulations governing applications to the BZA, has been violated.

First, D.C. Code § 6-641.07(f) indicates that "[t]he Mayor of the District of Columbia may require and fix the fee to be charged for an appeal, which fee shall be paid, as directed by said Mayor, with the filing of the appeal … ."  Plaintiff challenges the Office of Zoning's refusal "to issue the filing-fee payment voucher to [her] … ." Compl. § V ¶ A, at 7; *see also id*. § III.C ¶ 14d ("It flows rationally from the facts that Plaintiff … has a protected property interest in a 'filing fee payment' voucher … but Defendant Mayor will not act to allow Plaintiff's unusual situation the opportunity to be heard by the BZA.").  But she does not provide any legal authority for the proposition that the Office of Zoning must waive the requirement of a filing fee.  Regardless, Plaintiff's application was not denied on this basis; it was denied because she failed to provide certain required application documents.  *See* Ex. C.  Similarly, D.C. Code §§ 6-641.07(g)(1), (g)(3), (g)(4) outline the powers and procedures of the BZA once a valid application has been submitted.[4]  As such, they are irrelevant for the purposes of this case, which challenges whether the refusal of the Office of Zoning to docket Plaintiff's application as incomplete, before the BZA could consider it, violated her constitutional rights.  *See Francis I*, 2023 WL 4846625, at *3.  Plaintiff remains free to submit a new, complete application, fully entitling her to consideration under the cited provisions.

---

[4]  To be specific, D.C. Code § 6-641.07(g)(1) is additionally irrelevant because it describes a different type of matter heard by the BZA: challenges to administrative decisions made by the Department of Buildings or other administrative officers in enforcement of the Zoning Regulations, such as in granting or denying permit applications.  D.C. Code § 6-641.07(g)(3) covers the matter at issue here:  variance applications.

The District also did not violate any of the relevant regulations governing applications to the BZA. 11Y DCMR § 400.1 specifically charges the Director of the Office of Zoning[5] with reviewing applications for completeness, and 11Y DCMR § 400.2 directs the Director to reject applications should "the applicant fail[] or refuse[] to correct the deficiencies in the application by the date stated … ." *See also* 11Y DCMR §§ 300.1, .2 (providing, respectively, that "[e]ach application seeking approval of a … variance … shall meet the requirements of this section before it will be accepted by the Office of Zoning" and that "[n]o … variance application shall be processed until the application is complete …"). In turn, 11Y DCMR §§ 300.5–.8 outline what specific materials are necessary for an application. Plaintiff's application failed to include several of these items. *See* Exs. A, D, E. While the BZA "may, for good cause shown, waive" some of its rules or practice or procedure, *see* 11Y DCMR § 101.9, "that waiver is not mandatory, even assuming there is good cause for it," as this Court recognized. *Francis I*, 2023 WL 4846625, at *3.

Plaintiff's failure to include application materials that are mandated by BZA regulations indicates that any expectation she may have had that her application would nonetheless be accepted was wholly unjustified, or, in other words, a "unilateral expectation." *UMC Dev.*, 401 F. Supp. 3d at 151. "To have a property interest in a government benefit, 'a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it.'" *Psychas v. Dist. Dep't of Transp.*, Civil Action No. 18-81, 2019 WL 4644503, at *12 (D.D.C. Sept. 24, 2019) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Town*

---

[5] 11Y DCMR § 101.7(c) indicates that references to the "Director" also encompass the Director's designees.

of *Castle Rock v. Gonzalez,* 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). But "an abstract need or desire" is all Plaintiff has here. *See, e.g.*, Compl. § III.C ¶¶ 14b ("Entering 'n/a' [for required documents] … ought to be acceptable but is not … ."); 14c ("[T]he costliest building design and development products must accompany the request for BZA consideration, although pertinent information content is questionable."). "Similarly, the D.C. Circuit has explained in the land-use context, that whether zoning-related decisions implicate a protected property interest depends on 'whether the [relevant] statute or regulation places substantial limits on the government's exercise of its licensing discretion.'" *UMC Dev.*, 401 F. Supp. 3d at 152 (quoting *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 207 (D.C. Cir. 2003)). Here, to the extent the relevant regulations place limits on the government's discretion, those limits compel the government to *deny* incomplete applications such as Plaintiff's, not to accept them. *See* 11Y DCMR §§ 300.1, .2. As such, Plaintiff lacks any constitutionally protected interest in consideration of her incomplete application, and her procedural due process claim should be dismissed for that reason. *See Hettinga v. United States*, 677 F.3d 471, 479–80 (D.C. Cir. 2012).

      Finally, Plaintiff now also brings a claim explicitly under substantive due process. *See* Compl. § III.C. ¶ 13, at 11. This section of the Complaint cites the same D.C. Code provisions and proceeds to recite a litany of unsubstantiated allegations regarding OZ's processing of applications. *Id*. ¶¶ 13–13h. But this claim runs into the same obstacle as a procedural due process claim: lack of a cognizable liberty or property interest. *See Abdelfattah*, 787 F.3d at 540. "Although [substantive due process] normally imposes only very slight burdens on the government to justify its actions, it imposes none at all in the absence of a liberty or property

12

interest." *George Wash. Univ.*, 318 F.3d at 206.  For that reason alone, this claim should be dismissed.  Furthermore, even if Plaintiff had such an interest, "the doctrine of substantive due process constrains only egregious government misconduct."  *Id*. at 209.  "The 'plaintiff must at least show that state officials are guilty of grave unfairness,' which requires demonstrating either 'a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights.'"  *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012) (quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)).  No such claim is present here.  There is no plausible claim that OZ infringed or flouted any law, nor any evidence of animus in its decision.  Plaintiff's allegations in this section, to the extent they are not facially incorrect readings of District law or wholly unsubstantiated and cursory, consist of at most "inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, [which] do not warrant redress," *Elkins*, 690 F.3d at 562 (quoting *Silverman*, 845 F.2d at 1080); *see also George Wash. Univ.*, 318 F.3d at 210 ("[A] breach of local law does not of itself violate substantive due process.").  As such, Plaintiff's substantive due process allegations are also untenable and should be dismissed.

      **2.**      **Any Interest Plaintiff May Have in Her BZA Application Is Adequately Protected by the District's Administrative Procedures.**

While the Court did not previously address the second prong of the due process analysis, *see Francis I*, 2023 WL 4846625, at *3 n.4, Plaintiff's due process claim should also be dismissed because she was afforded all the process she was due.  "[A] fundamental requirement of due process is the opportunity to be heard … at a meaningful time and in a meaningful manner."  *Atherton*, 567 F.3d at 690 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).

These requirements are evaluated under the framework outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That test outlines three considerations:

> [F]irst, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1074 (D.C. Cir. 2003).

Here, while Plaintiff may have an interest in BZA consideration of her plans for her property, any such interest is necessarily tempered by the fact that property in the District is governed by an extensive set of zoning regulations, necessitating an orderly process for consideration of proposed noncompliant construction. *See generally* D.C. Code § 6-641.01, .02 (outlining the purpose and importance of the District's zoning regulations).

Further, there is little risk of erroneous deprivation, and little value in additional or substitute safeguards. Plaintiff is not prejudiced in any way by her incomplete prior application because she may simply submit a renewed application that contains all the required materials. And the Office of Zoning regularly works with applicants to help them submit full applications that can be properly and promptly considered by the BZA. Informal mechanisms like these for resolving procedural issues fully comport with due process. *See New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 32 (D.D.C. 2014) (noting the plaintiff there "had several opportunities to informally resolve its problems before [adverse action was taken]"). Even beyond these informal procedures, the D.C. Court of Appeals has noted that, under District law, Plaintiff could have sought review of the Office of Zoning's decision to reject the application as incomplete by filing a petition for review of agency action in the Superior Court of the District of Columbia. *See* Ex. F at 2. This combination of informal resolution

procedures with the agency, together with the potential for judicial review of the agency's decision constitute a "full panoply of due process protections." *New Vision Photography Program*, 54 F. Supp. 3d at 32 (quoting *Sloan v. Dep't of Hous. & Urban Dev.*, 231 F.3d 10, 19 (D.C. Cir. 2000)); *see also E. Trans-Waste of Md., Inc. v. District of Columbia*, Civil Action No. 5-32, 2007 WL 951536, at *4 (D.D.C. 2007) (noting that a post-deprivation appeals process satisfies due process even if the agency does not afford a pre-deprivation hearing).

Finally, the governmental interest in proper, complete BZA applications is significant. In adjudicating a variance request, the BZA must determine, among other things, whether "the requested relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan." *St. Mary's Episcopal Church v. D.C. Zoning Comm'n*, 174 A.3d 260, 269 (D.C. 2017) (internal quotation marks omitted). To make that determination, the BZA needs to know what the proposed structure and site will be. *See, e.g., id.* at 271–72 (considering the details of a proposed structure); *Draude v. D.C. Bd. of Zoning Adjustment*, 527 A.2d 1242, 1252 (D.C. 1987) ("[A]dverse effect on light and air to neighboring property can constitute a reason for denying a variance under the zoning regulations."). Without "[a]rchitectural plans and elevations in sufficient detail to clearly illustrate any proposed structure to be erected or altered, landscaping and screening, and building materials," 11Y DCMR § 300.8(c), among the other required materials, the BZA's consideration of whether to grant the requested variance based on the resulting structure's properties would be substantially hindered if not impossible altogether.

For her part, Plaintiff simply does not explain what additional process she believes she was due. A full adjudicative, trial-type hearing to consider every application for completeness would result in tremendous fiscal and administrative burden; the question as to whether a BZA

application contains all the items described in the BZA's application requirements is a quintessential "sharply focused and easily documented decision" for which such procedures are unnecessary. *Mathews*, 424 U.S. at 343. In short, while the outcome of the Office of Zoning's consideration of Plaintiff's application was unfavorable to Plaintiff, "an unfavorable outcome is not a violation of due process. Put more bluntly, Plaintiff's beef is with the result, not the process." *New Vision Photography Program*, 54 F. Supp. 3d at 32.

### B. Plaintiff's Equal Protection Claim Should Be Dismissed Because Plaintiff Does Not Plausibly Allege Any Discriminatory Classification, Purpose, Intent, or Impact.

Plaintiff also seeks relief under equal protection,[6] claiming that "[t]he activities of involved screening staff … showed disregard for impartial interpretations of the regulations and [an] intent to disadvantage racial minorities seeking BZA consideration." Compl. § II.B, at 4. But Plaintiff fails to plausibly plead a claim of discrimination.

> There are at least three ways a plaintiff can plead an equal protection violation. A plaintiff may allege that the government has expressly classified individuals based on their race; that the government has applied facially neutral laws or policies in an intentionally discriminatory manner; or that facially neutral laws or policies result in racially disproportionate impact and are motivated by a racially discriminatory purpose.

*Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 63 (D.C. Cir. 2016) (citations and quotations omitted). As this Court previously held, "Plaintiff's allegations most resemble the third form of Equal Protection claim—that is, disparate racial impact." *See Francis I*, 2023 WL 4846625, at *3.

"[A]bsent an overtly discriminatory classification, 'proof of racially discriminatory intent

---

[6] As with plaintiff's due process claim, equal protection claims against the District are evaluated under the Fifth Amendment rather than the Fourteenth. *See Bellinger v. Bowser*, 288 F. Supp. 3d 71, 80 (D.D.C. 2017) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

or purpose is required to show a violation of the Equal Protection Clause.'" *Roberts*, 741 F.3d at 160 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977)). But here, Plaintiff fails to plausibly allege any discriminatory intent or purpose. *See Francis I*, 2023 WL 4846625, at *3. In fact, this Complaint is even more sparse than the prior one on this question. To begin with, several of Plaintiff's allegations concerning racial discrimination center around the prior litigation rather than the underlying facts. For example, Plaintiff claims that in the course of that case "Defendant Mayor … deflected attention away from the stealth nature of historical and contemporary racial discriminatory processes." Compl. § III.C ¶ 11, at 10; *see also id*. at III.C ¶¶ 16, 16a (describing proceedings in the prior case under the caption "Racism in the 21st Century"). Plaintiff only vaguely attempts to link such allegations of racial discrimination with her BZA application, stating simply that: "[s]imilarly motivated, it can be argued, was the strategy for vetting BZA applications … ." *Id*. ¶ 12, at 10. Elsewhere, Plaintiff baldly claims that an alternative application process should be available for certain types of property owners, of whom she alleges a high percentage are Black. *Id*. ¶ 14a, at 12. But she does not include any additional, plausible allegations about why or how the current requirements for variance applications may be related to the race of potential applicants. She appears instead to be planning to assert, at some later point in this case, "that racism cannot be dismissed as a motivating factor," without explaining in the least what kind of "supporting evidence" she may have for that proposition. *Id*. § V ¶ C, at 7.

So, at root, these claims should be dismissed for the same reason her prior ones were. Discriminatory intent "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

17

identifiable group." *Smith v. Henderson*, 54 F. Supp. 3d 58, 69 (D.D.C. 2014) (quoting *Pers. Admin. of Mass. v. Feeney,* 442 U.S. 256, 279 (1979)), *appeal dismissed*, No. 14-7120, 2015 WL 5237333 (D.C. Cir. 2015). "Run-of-the-mill disparate impact—that is, the fact that a policy disproportionately hurts a certain group—does not clear this hurdle." *Id.* at 69 (citing *Arlington Heights,* 429 U.S. at 264–65). In other words, "[t]o make out an Equal Protection case, [a plaintiff needs] to show 'a clear pattern' of discrimination, 'unexplainable on grounds other than race.'" *Id.* at 70 (quoting *Arlington Heights*, 429 U.S. at 266).

Here, the record amply demonstrates that the Office of Zoning's decision was taken for reasons other than race. Far from "any departures from normal procedures" or "substantive departures from factors normally considered in reaching a decision," *Bellinger*, 288 F. Supp. 3d at 80 (citing *Arlington Heights*, 429 U.S. at 266–68), the decision to reject Plaintiff's application was fully in line with the BZA's normal procedure for applications: Because it lacked certain documents expressly required by BZA regulations, it was not accepted. *See* Ex. C ("[Your] Application … has been deemed deficient … . If you do not correct the deficiency within the allotted time, your application will be voided and a new application will have to be submitted."). And the decision to require documents such as architectural plans for variance applications is eminently reasonable because it allows the BZA to decide whether a variance is justified under the circumstances with the benefit of detailed, nonspeculative information about the dimensions, shape, layout, and other attributes of the proposed structure. *See, e.g.*, *Dupont Circle Citizens Ass'n v. D.C. Bd. of Zoning Adjustment*, 182 A.3d 138, 140 (D.C. 2018) (examining proposed structure's plans in detail in reviewing grant of variance); *St. Mary's Episcopal Church*, 174 A.3d at 264–65, 272 (describing proposed construction plans in detail and evaluating project's impact on light and air afforded a neighboring building).

In short, Plaintiff's "spare facts and allegations are not enough to survive a motion to dismiss under *Iqbal* and *Twombly*," because "[t]he [C]omplaint and supporting materials simply do 'not permit the [C]ourt to infer more than the mere possibility of misconduct … .'" *Atherton*, 567 F.3d at 688 (quoting *Iqbal*, 556 U.S. at 679). For these reasons, Plaintiff's equal protection claim should also be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and dismiss Plaintiff's Complaint with prejudice.

Date: January 23, 2024.                                Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1018978]
Assistant Chief, Equity Section

*/s/ Brendan Heath*
BRENDAN R. HEATH [1619960]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 442-9880
(202) 769-6157 (cell)
brendan.heath@dc.gov

*Counsel for Defendants*