### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILDRED E. FRANCIS** | ) |
| Plaintiff, | ) |
| v. | ) |
| **MURIEL BOWSER,** | ) |
| Mayor of Washington, DC | ) |
| **ANONYMOUS,** | ) |
| Acting Director of D.C. Office of Zoning | ) |
| Defendants. | ) |
| | ) |

Civil Action No.1:23-cv-03156-TSC

CLERK
...BANKRUPTCY
COURTS FOR DC

2024 MAR 15 P 4:48

RECEIVED

RECEIVED
Mail Room

MAR 18 2024

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

### PLAINTIFFS MEMORANDUM IN OPPOSITION TO DEFENDANT'S Rule 12(b)(6) Motion to dismiss Plaintiff's Complaint

1.  Defendant Mayor Bowser received Plaintiff's Complaint on November 3, 2023 and filed a Rule 12(b)(6) motion to dismiss on January 23, 2024 seeking the Court dismiss with prejudice the claims set forth therein.  **The Complaint focuses on Plaintiff's unsuccessful attempts to file an appeal for hearing by the Board of Zoning Adjustment (BZA), as owner of a nonconforming residential-zoned lot, to identify and designate what variances are acceptable/can be granted - to permit locating a single-family detached dwelling within the boundaries of the lot.  To equitably decide the issues raised in Plaintiff's Complaint a synopsis of functional aspects of the current established process is presented and documents that it gives priority to profit and commercial interests over the private owner and disadvantages people of color public.**

2.  The Board of Zoning Adjustment (BZA) was created in 1938 "to be the release valve of zoning and to deal with unusual situations of property and regulation", by the provisions of the Zoning Act of 1938.  BZA was authorized to act in three areas: variances, special exceptions

1

and hear appeals of administrative decisions.  It is an independent, quasi-judicial body to grant

relief from the strict application of the Zoning Regulations (variances), approve certain uses of

land (special exceptions) and hear appeals of actions taken by the Zoning Administrator at

DCRA.

3.  LOT FEATURES:  A residential-zoned city lot, 5,245 square-feet in area, plated under

the Zoning Act of 1920 presents an unusual situation requiring BZA consideration, A principle

dwelling unit that is a detached single- family dwelling, is permitted as a matter of right.  The

lot's unusual shape, surroundings, and topology makes development costly; comparison of two

different footprints for a potential dwelling is problematic and unavoidable to decide what is in

the public interest.  A white WWI veteran created the lot in the 1920s by purchasing from other

land owners two land fragments (both with racial covenants) and in conformity with the

prevailing zoning regulations and the knowledge of municipal officials commenced an

interrupted development of the unified plot of land.  In March 1953 the former army NCO,

presumably an engineer, sold the plot of land to Plaintiff's parents, a Black working-class couple

with four children. The plot had an in-sequence street address (#3009), was zoned residential,

contained six old-growth mature trees and several man engineered additions: a grass median

access lane 8 ft wide  (paved with stone aggregate concrete) edging the longest  border from the

street to the rear property line and an 20' ft x 20' ft wood "place holder" cabin protecting  an 18

ft x 18 ft concrete foundation with 3ft high walls.  A residence on the adjoining property lot

(#3007), purchased concurrently has been home to the Francis family since 1953.

4.  OWNER:  Plaintiff was born in Washington DC in 1938, educated in the racially

segregated public school system, and majored in STEM subjects during undergraduate studies at

a local college completed in 1959.  Duration of post-graduate studies was similar or greater than

that of architects or attorneys; a 45 year long career participating in collaborative academic research endeavors demonstrates adeptness in organizing and presenting information. Plaintiff wants to build a 900 square foot residence with three levels for owner occupancy; she currently resides in a 1910 built farmhouse on an adjoining lot that is no longer habitable for a citizen with mobility and noise sensitivity issues.

## A. FEDERAL STATUTE THAT GIVES PROPERTY RIGHTS TO OWNER

5. City statutes governing permitted use of the residential lot were established by Acts of Congress applicable exclusively to the District of Columbia in 1938 [See. DC Official Code §6-641.07(f), §6-641.07(g)(1) et seq]; these statutes existed in March 1953 when the residential lot was purchased by Francis' now deceased working class Black parents and in 1967 when first owned mortgage free, and in 2003 when title transfer to current owner and heirs occurred. Soon after, the need arose to build a dwelling on the #3009 lot but the tangle of misperceptions by municipal employees and financial barriers forced a halt in expenditures.

6. DC Official Code §6-641.07(f) states "*Appeals to the Board of Adjustment (BZA)* may *be taken by any person aggrieved*, or organization authorized to represent such person, or by any officer or department of the government of the District of Columbia or the federal government affected *by any decision of the Inspector of Buildings* granting or refusing a building permit or granting or withholding a certificate of occupancy, *or any other administrative decision based in whole or in part upon any zoning regulation adopted under this subchapter*. The Mayor of the District of Columbia may require and fix the fee to be charged for an appeal, which fee shall be paid, as directed by said Mayor, with the filing of the appeal; provided, that no citizen's association, or association created for civic purpose and not for profit shall be required to pay said fee. There shall be a public hearing on appeal."

7.   DC Official Code §6-641.07(g)(3) in plain text states "*Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations* or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, *the strict application of any regulation adopted under this subchapter would result in* peculiar and exceptional practical difficulties to or *exceptional and undue hardship upon the owner of such property,* [the BZA is empowered] to authorize upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embedded in the zoning regulations and map".

8.   Defendant Mayor's contention that Plaintiff has no claims under federal statute that merit the opportunity to seek BZA consideration indicates a perverted view of why the Plaintiff seeks to file an appeal with the BZA; she wants and is entitled to BZA adjudication of where to build and a determination of the parameters of a compliant structure.

## B.  FEE-SIMPLE LAND OWNERSHIP  CONFERS PERMITTED AS A MATTER OF RIGHT  USE AND CONSTITUTIONALLY PROTECTED ENTITLEMENT

**9**. The basic "real property" rights common law judges recognized, beyond acquisition and disposal were the right of active use and the right of sole dominion (variously described as a right to exclude others, a right against trespass or a right of quiet enjoyment).  See Cato Guidebook for Policymakers 8th ed. Pg 175, Cato Institute.  Fee-simple ownership of land by its very nature includes the right to develop and use it.  Proponents of this view have "noted the existence of a common law right to develop and use land unimpeded by government so long as

these activities did not amount to a public nuisance.  See . Kitmar Builders, Inc v Zoning Bd. Of Adjustment, 439 Pa, 466, 478-81, 268 A.2 d 765, 771 (1970); Exton Quarries, Inc. v. Zoning Bd. Of Adjustment, 425 Pa. 43, 67, 228 A.2d. 169, 182 (1967). In  Nollan v California Coastal Commission 483 U.S. 825, 107 S. Ct 3141 (1987) the United States Supreme Court recognized the existence of a true land development right as an incident of fee simple land ownership.

**10**. City statutes/ordinances governing permitted use of the residential lot were established by Acts of Congress applicable exclusively to the District of Columbia [See. DC Official Code §6-641.07(f), §6-641.07(g)(1) et  seq]; these statutes existed in March 1953 when the residential lot was purchased by Francis' now deceased working class Black parents, and in 1967 when first owned mortgage free, and in 2003 when title transfer to heirs occurred.

**11**. Plaintiff submitted appropriate papers documenting the basis for a BZA appeal from a private Black owner with true land development right as an incident of fee simple land ownership, a long recognized constitutionally protected interest. See.  Nollan v California Coastal Commission 483 U.S. 825, 107 S. Ct 3141 (1987).  The submission sought  BZA consideration of permitted-by-right use of a nonconforming lot; theoretically, a single-family residential dwelling could be constructed but compliance with all zoning regulations is impossible, even for a modest size starter home (919 sq. ft in 3 levels) that Francis intends to build and occupy until death.  The hypothesized dwelling reflects smaller house sizes common in the 1940's when about 70% of new single-family homes in the U.S. were less than 1,400 square feet as compared to today with only 8 percent of new single-family homes in the U.S. are smaller.  (Source: The New York Times, Sept 2022)

**12**.  Defendant Mayor falsely asserts that Francis had no cognizable fourteenth amendment property rights in the residential use and development of the subject lot is not

credible.  The "interest in land" that ought to be evident derives from a fee simple estate

ownership, which has long enjoyed protection at common law.  [See:  Town of Orangetown v.

Magee, 594 N.Y. S.2d 951,960 (N.Y. Sup. Ct. 1992). (holding that vested right in building permit

constitutes a "'property interest' which is subject to protection under the Fourteenth

Amendment"); Brady v. Town of Colchester, 863 F.2d 205, 212 (2d Cir, 1988) (discusses "vested

property rights" and suggesting that they may amount to "protectible fourteenth amendment

property right"); Littlefield v. City of Afton, 785 F2d 596,602 (8th Cir. 1986) ( holding "an

applicant for a building permit has a constitutionally protected property interest in the permit.") ].

13.  "In the context of land-use regulation, the concept of "vested" rights derives from

common law and is an equitable doctrine that prohibits the government from preventing a use of

land once commenced through the imposition of new regulation. . . .  The doctrine is said to

originate through principles of equitable estoppel or constitutional doctrines protecting property

interests". (Terry D. Morgan, "Vested Rights Legislation" The Urban Lawyer 34: 131-154 Winter

2002).

14.  Francis, the court-appointed administrator for the estate of the deceased owner-

parent, is a private owner permitted-by-right to use the land for a single-family detached

dwelling but impeded from doing so by the Defendant Mayor's inaction.  The submitted appeal

materials that Francis prepared to justify permit issuance (i.e. voucher to pay filing fee) to meet

with BZA and request it designate the collection of non-compliant zoning elements allowed for a

conforming structure on the extant non-conforming lot.  The record evidence supports the

conclusion that the zoning of the residential property has been unchanged since the plat was

approved pre 1938 and that Francis has protectable fourteenth amendment property rights in the

use and development of the subject property for a single-family dwelling.

**C.** LEGAL THEORIES DEEMED RELEVANT BY THIS COURT IN DISMISSING PLAINTIFF'S FIRST VERSION COMPLAINT ARE NOT THOSE RELIED ON IN THE REVISION

15.  Defendant Mayor falsely contends "the relevant theories " of the revised Complaint "are the same as that prior action".  The language evokes an observation of one writer:  "One hears very few proper lies in politics," he writes. "Using vague, slippery or just meaningless language is not the same as lying: It's not intended to deceive so much as to preserve options, buy time, distance oneself from others or just to sound like you're saying something instead of nothing".  (Barton Swain, "The Speechwriter" pub 2015 quoted in NYT 2/18/24, p5).  A few differences between the revised Complaint and its predecessor (No. 22-cv-127-TSC) are notable.

(15.1)   Defendant Mayor falsely contended that a BZA application for area variance relief must contain "all of the items described in the BZA's application requirements" and obscures the fact the aforementioned "application requirements" only exist for a " X §1002.1 area variance" .where the applicant seeks relief from strict compliance that results in "peculiar and exceptional practical difficulties" to the owner.

(15.2).  The truth is Francis prepared and submitted documents warranting the need  for area variance relief from strict compliance that results in " exceptional and undue hardship" upon the owner;  this legitimate  BZA appeal is not described in the IZIS online system file, information requirements are unwritten and not public and are unknown to DCRA/OZ screening staff .

(15.3)   Defendant Mayor endorses the concept that "Office of Zoning" was/is capable of using judgement and rational decision-making, whereas the Plaintiff assumes only human beings

make decisions and uses the term "OZ" to designate an inanimate object, a place in which the functions (as consulting, record keeping, clerical work) of a public officer are performed.

(15.4)   The Office of Zoning is an *independent agency* of municipal government and in the organizational chart situated in proximity to the Executive Branch cluster headed by Deputy Mayor for Planning and Development that includes the Dept of Consumer and Regulatory Affairs (DCRA), as well as Office of Planning.   The term "independent agency" means any agency of the government of the District of Columbia with respect to which the Mayor and the Council are not authorized by law, . . . . , to establish administrative procedures, but does not include the several courts of the District and the Tax Division of the Superior Court". [DC Official Code  § 2-502 (5) ]. There is not a scintilla of evidence in the record that any OZ personnel or staff participated in the review, disposition or vetting of the materials submitted by Plaintiff for consideration. Yet, there are repeated false assertions by Defendant Mayor that the OZ rejection of Plaintiff's BZA application for a variance is the issue Plaintiff wants addressed by this federal court.  The reasons are mainly to divert Court attentions form actions of the incumbent Director of OZ or the acting Director are

(15.5)   Defendant Mayor falsely contended that Plaintiff's use of the term " DC Office of Zoning" in the caption denoted the real space, instead being the invention/ legal fiction that corresponds with the acronym publicly used to access the interactive zoning information system, which is dcoz.dc.gov. Plaintiff presumed the existence of a "Acting Director of DCOZ" person, responsible for vetting submitted material in order to compose an inventory of deficiencies; and she invented a descriptive consistent with the dictionary definition - "acting adj 1. holding a temporary rank or position: performing services temporarily (~president)". An invented title and agency name was used since it's unknown who the actual actors were – they could have been

employees of the Department of Consumer and Regulatory Affairs (DCRA), the executive enforcement arm, or some other city office employees or a robot. This Court was confused about what redress Plaintiff sought and from whom. Defendant Mayor has not divulged the identity of anyone given the "temporary rank" Acting Director of DC Office of Zoning.

(15.6)   Defendant Mayor's falsely proclaimed "Office of Zoning Director Sara A Barden" a co-defendant in the first acknowledged reply to Complaint service and in all subsequent filed papers. No legal theory is posed to justify this stance. In prior city court proceedings examining judges were advised that the Office of Zoning Director had neither read the appeal material Plaintiff had submitted nor rendered any advice/opinion on its treatment /disposition /assessment. Yet, in the caption of the first document filed by Defendant Mayor, the first listed defendant was "Sara A. Barden, Director of Office of Zoning". That document was a motion for a 30-day extension to file a reply to the Complaint and it was granted by this Court. The next document filed was Defendant's Rule 12(b)(6) motion to dismiss and had similarly altered caption name and title changes. "Relevant legal theory" this Court relied on in the review of the prior Complaint (No. .22-cv-127-TSC) to justify granting Defendant Mayor's motion to dismiss are not likely to be relevant in the review of the revised complaint. The "Acting Director of DC Office of Zoning", is a legal fiction defendant who is not a state official by definition because the Office of Zoning is an independent agency of municipal government; the actions of an unofficial 'acting' agent are not construed as those of a city officials.

(15.7)   Plaintiff lacks legal training and wary of the legal and financial consequences of engaging in unnecessary litigation decided to discontinue participation in the case with "Sara A. Barden" posing as a defendant.

**16**.  The process that Defendant Mayor has established prevents an aggrieved owner from paying the fixed filing fee ($325) with the submission of application appeal materials because no voucher is issued until all the "screener mandated preconditions" are met, however costly or irrelevant.  To a private owner without business interests, similar to Plaintiff, $60K is an exorbitant levy to have had imposed by anonymous staff, with no justification, as a precondition for the opportunity to get permission to use and develop the residential lot as intended.

**D**.  <u>FRANCIS HAS A VESTED RIGHT TO USE THE RESIDENTIAL LOT  AS</u>
<u>INTENDED AND CONTINUE DEVELOPMENT; THESE ARE COGNIZABLE</u>
<u>PROPERTY INTERESTS.</u>

**17**.  Francis claims a permitted-residential use and development right as an incident of fee simple land ownership.  See. Nollan v California Coastal Commission 483 U.S. 825, 107 S. Ct 3141 (1987).   The Fourteenth Amendment's due process clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s]".  See.  Boddie v. Connecticut 401 U.S. 371, 380 (1971).  Therefore, the question of whether Francis was deprived of a protected interest by preventing BZA consideration and resolution of the zoning conflict set forth in the appeal materials cannot be disputed by Defendant Mayor: a submitted BZA appeal is a prerequisite to use the non-conforming residential lot and acquisition of essential permits (e.g. installation of electrical, water and sewage lines) in furtherance of property development

**18**.  "In the context of land-use regulations, the concept of "vested" rights derives from common law and is an equitable doctrine that prohibits the government from preventing a use of land once commenced through the imposition of new regulations". (Morgan,)   Information in the BZA appeal application materials that Plaintiff submitted substantiates permitted-by-right

"use of land already commenced"; substantial construction in support of a residence was completed prior to 1938 by the first/initial owner; the evidence of record indicates major land/terrain remodeling changes were authorized by zoning authorities . Courts have conferred significance to substantial construction as a feature that embodies a "vested right". See: Navin v. Town of Exeter, 339 A.2d 12, 14-15 (N.H. 1975) (establishing that property owner obtained vested rights where owner made either substantial construction or expenditures on the property in good faith before zoning ordinance was revoked); Simpson v. City of Charlotte, 443 S.E. 2d 772, 776 (N.C. Ct. App.1994) (holding that a property owner can acquire a vested right in two ways: either by meeting all the statutory requirements necessary for a building permit or by making a "substantial beginning" in construction, if made in good faith); Lake Bluff House Partners v City of South Milwaukee, 525 N.W. 2d. 59, 67 (Wis. Ct. App. 1994). (finding "[A] property owner can have vested rights in a planned building before actual construction begins; , , ,"retrospective effect' of an ordinance is 'not favored, and this is especially true where vested rights are affected; and . . . . vested rights can be separated from zoning compliance"). (Citations omitted). The judge in Valley View Indus. Park v City of Redmond, 733 P.2d 182, 191-92 (Wash. 1987) commented: "[C]itizens must be protected from the fluctuations of legislative policy so that they can plan their conduct with reasonable certainty as to the legal consequences. Property development rights constitute 'a valuable property right'" (Citations omitted) (quoting West Main Assocs v. City of Bellevue, 720 P.2d 782, 785 (Wash. 1986).

**E.** THE RIGHT TO FILE A BZA APPEAL IS AN ENTITLEMENT CREATED BY FEDERAL STATUTE FOR LOT OWNER USE AND NOT SEPARABLE FROM CONSITUTIONALLY PROTECTED PROPERTY USE INTERESTS

**19.** Francis claims that filing a BZA appeal application to build a detached single-family dwelling is a vested property right that "established city procedure" has deprived her without according her proper procedural safeguards. This property right rose to vested status in 2003 when informally advised by DCRA-staff that the extant wooden structure was nonconforming and could not be modified or converted into a residence absent a BZA variance. Regulations adopted in 2016 by municipal authorities detailing specified variance relief issues are not automatically controlling dictating the issues the BZA can consider. See: Stuckman v. Kosciusko County, 485 N.E. 2d. 775, 777 (Ind. Ct. App. 1986) ("The right of a governmental body to enact zoning ordinances is subject to vested property interest acquired prior to enactment of the ordinance"), opinion vacated on other grounds, 506 N.E. 2d 1079, 1081 (Ind 1987).

**20.** Various older cases have clearly established that causes of action were property [See Logan v. Zimmerman Brush Co 455 U.S. 422 (1983). Mullane v Central Hanover Bank & Trust Co 339 U. S. 306 (1950). Boddie v. Connecticut 401 U.S. 371, 380 (1971)]. There is no meaningful distinction between the cause of action at issue in Mullane, and in Logan and Plaintiff's right to use the BZA's adjudicatory procedures to resolve the zoning issues faced by the private owner of the nonconforming lot. The BZA is the quasi-judicial mechanism/body established by federal statute in 1938 to adjudicate zoning related disputes in this federal city; it is empowered to hear and resolve grievances of property owners and affected community members.

**21.**   The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).   A claimant has more than an abstract desire or interest in redressing his grievance; his right to redress is guaranteed by the state    The right to use the BZA adjudicatory procedures shares these characteristics for Francis.  It is a statutory entitlement for persons qualified to receive the benefit [BZA consideration and adjudication of a zoning related issue] and cannot be severed injudiciously.  See Goldberg v Kelly 397 US at 261-62.; and Matthew v Eldridge, 424 U.S. 319 (19760.

**22.**   The property interest that Francis had in the unfettered capability to seek BZA consideration was not conditioned by any procedural limitations that accompanied the grant of that interest.  See Arnett v Kennedy, 416 U.S. 134 (1974).  The statute doesn't say or imply that only appeals accepted by the screening processors warrant BZA consideration.

**22.**   Defendant Mayor boldly falsely claims the applicant has the option of submitting material to the D.C. Land Administrator, an employee of DCRA an agency under the purview of Defendant Mayor.  Clearly, that path cannot result in a different outcome -  by design since the screener expects the information content of the material included in the online submission to mirror that required for sub-title "X §1002.1 area variance " relief and no other basis for area variance relief exists or is accepted.   A nonbusiness private owner of a residential city lot should not be coerced to lie, in order to merit the opportunity to seek BZA consideration of conflicting zoning regulation interpretations that complicate and prevent permitted by-right land use,  a constitutionally protected property interest.

Lake Bluff House Partners v City of South Milwaukee, 525 N.W. 2d. 59, 67 (Wis. Ct. App. 1994) (assessing prior cases and noting various emerging principles: "[A] property owner can

have vested rights in a planned building before actual construction begins; , , ,"retrospective effect' of an ordinance is 'not favored, and this is especially true where vested rights are affected; and . . . . vested rights can be separated from zoning compliance"). (Citations omitted).

Friends of the Law v King County 123 Wn 2d 518 (1994) – In the absence of an ordinance specifying the requirements for a "fully completed" preliminary plat application, a developer's good faith attempt to comply with the ambiguous terms of existing ordinances may be sufficient

## F. CONCLUSION

The Rule 12(b)(6) motion to dismiss from Defendant Mayor filed 1/23/24 should be denied by this Court based on the material filed to date. Yesterday, Plaintiff received from the Clerk of the Court a copy of an order by this Court issued 3/07/24.  A scheduled response to remaining issues raised in Defendant's Rule 12(b)(6) motion (e.g. request to dismiss Plaintiff's claims with prejudice) and those raise in the Court's order is planned and will be forthcoming after seeking direction from this Court.

Date: March 14, 2024

Respectively,

Mildred E. Francis, Pro se
3007 26th St., N.E.
Washington, D.C.  20018

CERTIFICATE OF SERVICE

I, Mildred E. Francis, certify that copies of this filing were sent by first-class mail to the

following counsel on March 15, 2024:

Brendan Heath

Assistant Attorney General

400 Sixth St., N.W. Suite 10100

Washington, D.C. 20001

Mildred E. Francis, Pro se